IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHAWN BROWN                          :

                                     :

    v.                               :   Civil Action No. DKC 07-2591

PRINCE GEORGE'S COUNTY, MD,          :
et al.
                                     :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this civil rights action are the motions for summary judgment and to strike filed by Defendants Prince George's County, Maryland ("the County"), and County police officers Zachary O'Lare, Rodney Lewis, Anthony King, and Eric Brown (collectively, "Defendants") (ECF Nos. 101, 109), and the motion for leave to file surreply filed by Plaintiff Shawn Brown (ECF No. 110). The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, all motions will be denied.

## I.   Background

### A.   Factual Background

The parties recite substantially different accounts of the facts, and both versions will be set forth here.

### 1.   Plaintiff's Version of Events

Near dusk on the evening of March 29, 2007, Plaintiff was walking down a street in Capitol Heights, Maryland, when two

unmarked vehicles, one of which was a "4-door car," suddenly "slammed on the[ir] brakes" and pulled up next to him. (ECF No. 101-4, Shawn Brown First Dep., at 57).[1]  Plaintiff saw "quite a few people," whom he described as mostly "White guys," jump quickly out of the vehicles and begin running toward him while reaching for weapons and yelling "freeze." (*Id.* at 62, 65; ECF No. 101-5, Shawn Brown Second Dep., at 14).   The men were dressed in "dark clothing that did not identify them as police officers, as far as [Plaintiff] could see." (ECF No. 101-6, Shawn Brown Resp. to Interrog., at 4).  Believing that these men might be planning to rob him, Plaintiff ran across the street and toward a residential area.  He did not look back during the entire time that he was running away from these unidentified men.

The chase continued for several minutes, and Plaintiff was ultimately tackled by "[a] big guy" in the side yard of a nearby home owned by Lucille Clark. (ECF No. 101-5, at 21).  At this point, although Plaintiff was no longer attempting to flee, at least five men began to beat him.  Plaintiff "felt a lot of punches in [his] face, kicks in the back of [his] head, [and] kick[s] in the side." (ECF No. 101-4, at 66).  He also felt

---

[1] The page numbers listed represent those provided by the CM/ECF system.

other objects – which could have been night sticks – hitting him "all over [his] body." (ECF No. 101-5, at 28). To protect himself, Plaintiff turned on his side and used his hands and arms to cover his face.

During the beating, which lasted "a long time," Plaintiff heard one of the men remark "Why [did] you run, why [did] you run" before another ultimately said "that is enough, that is enough; stop." (ECF No. 101-4, at 69-70). At that point, the men ceased beating Plaintiff, and an ambulance was called.[2] Plaintiff asserts that he was bleeding profusely from the face, choking on blood, and unable to speak, and remembers little about this time period except that there were at least two African-American men at the scene and "a lot of people . . . standing around [him] huffing and puffing." (*Id.* at 71). When emergency medical technicians ("EMTs") arrived, despite the fact that Plaintiff's "face bore the linear criss-cross marks of bootlaces" (ECF No. 101-6, at 4), some unidentified men at the scene informed them that Plaintiff had been injured "during an

---

[2]   At approximately this time, Lucille Clark called the police to report that she had heard "a large thump" in her yard, followed by "some [additional] noises and then . . . moaning." (ECF No. 101-15, Lucille Clark Statement, at 2). Ms. Clark later stated that the sounds she heard "might have been" the sound of a beating, but that she could not "be sure." (*Id.* at 4).

3

alleged fall while being chased by police" (ECF No. 105-10, at 2).[3]

Plaintiff slipped in and out of consciousness while being transported to the County hospital.  After arriving there, hospital staff determined that Plaintiff needed to be transferred by helicopter to the University of Maryland Hospital in Baltimore ("the Baltimore hospital") for treatment.  There, a team of surgeons determined that Plaintiff had numerous fractures to bones in his face and skull, and they inserted a metal plate into his forehead in an attempt to repair the damage.[4]  Plaintiff also received treatment for a punctured lung and fractures of his cervical spine.  In total, he spent more than "a month-and-a-half" in the hospital recovering from his injuries.  (ECF No. 101-4, at 84).  It was during this time that Plaintiff learned that the men who had pursued him on the evening of March 29, 2007, were police officers.[5]

---

[3] As a result, Plaintiff's medical records from this incident indicate that his injuries were suffered during some sort of fall.

[4] Upon arrival at the Baltimore hospital, Plaintiff was comatose, and his doctors performed a tracheotomy to help ease the difficulties he was experiencing when he tried to breathe.

[5] Plaintiff indicated that an Internal Affairs investigator from the County police department visited him during his stay at the Baltimore hospital.  When the investigator stated that he wanted to question Plaintiff about the events that took place on

Plaintiff continues to suffer the effects of this altercation. His face is disfigured, his teeth were knocked out and have not yet been replaced, and he has double vision in one eye. He also becomes easily winded when working or walking due to his lung injury.

### 2. Defendants' Version of Events

Defendants recite a substantially different set of facts. Officers O'Lare, Lewis, King, and Brown (collectively, "the Defendant officers") were participating in a drug "buy-bust" operation known as "March Madness" on the evening of March 29, 2007. (ECF No. 101-13, Eric Brown Dep., at 21-22).[6] After being notified that Plaintiff had engaged in a drug transaction near a restaurant in Capitol Heights, the Defendant officers approached him in their unmarked Dodge minivan as he walked down the street. Officers O'Lare, King, and Brown, each dressed in their dark blue utility uniforms, jumped out of the vehicle to arrest Plaintiff.[7] They identified themselves as police officers and

_____

March 29, 2007, Plaintiff referred the investigator to his attorney.

[6] Officers King, Lewis, and Brown are African-American males, while Officer O'Lare is a Caucasian male.

[7] Officer Lewis, who was dressed in a "plain shirt" and uniform pants, was driving the van and parked it after the other officers had jumped out. (ECF No. 101-8, Rodney Lewis Statement, at 3). After parking the van, Officer Lewis went in

ordered Plaintiff to stop.  When Plaintiff instead began to run away, Officers O'Lare, King, and Brown pursued him on foot.

The officers chased Plaintiff around several residences and, when Officer Brown was within a few feet of Plaintiff, he jumped in the air and tackled him.  At that time, Officer Brown and Plaintiff were in a dimly-lit yard containing large amounts of debris, including a large concrete slab and broken bricks. Both Plaintiff and Officer Brown landed on the concrete slab following the tackle.  Because Plaintiff hit the slab face first, he suffered significant facial injuries.  Officer Brown suffered minor knee injuries.  When Officer Brown realized the extent of Plaintiff's injuries, he "tried to keep him calm" and did not handcuff him.  (*Id.* at 41).  Officers O'Lare and King, who had run around the other side of the residence to intercept Plaintiff, along with Officer Lewis and some additional police officers, arrived on the scene within moments, and an ambulance was called.  Other than Officer Brown's tackle of Plaintiff, the Defendant officers never came in physical contact with Plaintiff during this incident.

After Plaintiff's release from the hospital, he was indicted for several drug-related crimes stemming from the events of March 29, 2007.  Plaintiff ultimately entered an

---

search of Plaintiff and his fellow officers near the residences where he had seen them running.

*Alford* plea on the charge of conspiracy to distribute cocaine. He received a ten-year suspended prison sentence.

### B.   Procedural Background

On May 1, 2007, after providing written notice to the County, Plaintiff filed a complaint in the Circuit Court for Prince George's County ("the County circuit court"), alleging numerous state and federal constitutional claims against the County and "unknown" County police officers. (ECF No. 2, at 1). After removal to this court, the parties jointly requested that the action be stayed during completion of the criminal proceedings then pending against Plaintiff. The stay was in place from December 27, 2007, until April 1, 2008. During the stay, Plaintiff filed a complaint in the County circuit court against ten individual County police officers, making allegations similar to those set forth in his initial complaint. That case was also removed to this court. On April 22, 2008, the court consolidated these two actions.

Plaintiff thereafter moved to amend his complaint, and the court granted this request. Plaintiff's amended complaint set forth the following four counts:   (1) a claim against ten individual County police officers and other "unknown" officers for violations of Articles 24 and 26 of the Maryland Declaration of Rights; (2) a *respondeat superior* claim against the County for the same violations; (3) a claim pursuant to 42 U.S.C. §

1983 against the individual County officers and other "unknown" officers for violations of the Fourth, Sixth, and Eighth Amendments to the United States Constitution; and, (4) a *Monell* claim against the County for violations of the Fourth, Sixth, and Eighth Amendments. (ECF No. 39). The County and the individual officers moved to dismiss, or alternatively, for partial summary judgment. On March 24, 2009, the court issued a memorandum opinion and order granting in part and denying in part the motion. (ECF Nos. 68-69). All claims against "unknown" officers were dismissed, as were Plaintiff's claims under Article 24 of the Maryland Declaration of Rights and the Sixth and Eighth Amendments to the United States Constitution.[8]

On June 24, 2009, the parties filed a consent motion to stay the proceedings while federal authorities conducted a criminal investigation into whether excessive force had been used during Plaintiff's arrest.[9] The court granted this request, and the case was administratively closed pending completion of this investigation. In November 2010, the parties notified the

---

[8] Plaintiff also conceded to the dismissal of his claims for false arrest and false imprisonment, noting that his remaining claims were based only on the alleged use of excessive force against him during his arrest.

[9] The United States had previously moved to intervene for the limited purpose of seeking a stay in discovery pending the outcome of this criminal investigation. While the court granted the motion to intervene in order to seek a stay, it ultimately denied the motion to stay. (ECF No. 71).

court that the stay could be lifted, and discovery resumed. Following additional discovery, Plaintiff voluntarily moved to dismiss the action against six of the ten individual County police officers, leaving only the County and Officers Brown, O'Lare, King, and Lewis as Defendants.

On September 13, 2011, Defendants moved for summary judgment on counts one through three. (ECF No. 101). Plaintiff thereafter opposed Defendants' motion, and Defendants timely replied. Approximately three weeks later, Plaintiff filed a surreply, contending that Defendants had "mischaracterized the . . . argument[s]" in his opposition to their summary judgment motion. (ECF No. 107-1, at 1). Defendants moved to strike the surreply (ECF No. 109), and Plaintiff has opposed this motion and moved retroactively to file a surreply (ECF No. 110).

## II. Defendants' Motion to Strike Plaintiff's Surreply and Plaintiff's Motion for Leave to File Surreply Will Both Be Denied

Defendants have moved, pursuant to Fed.R.Civ.P. 12(f), to strike Plaintiff's surreply because it was filed without permission and "does not attempt to address matters presented for the first time in [the] reply." (ECF No. 109-1, at 2). Rule 12(f) allows the court to strike certain matters "from a pleading." Defendants' motion to strike does not seek to strike any portion of a pleading; rather, it aims to strike a memorandum submitted by Plaintiff in response to Defendants'

9

summary judgment papers. *See* Fed.R.Civ.P. 7(a); *Tepeyac v. Montgomery Cnty.*, 779 F.Supp.2d 456, 460 (D.Md. 2011) (noting that memoranda opposing motions are not "pleadings"), *reversed in part on other grounds*, --- F.3d ----, 2012 WL 2403400 (4th Cir. June 27, 2012). Because there is "no basis in the Federal Rules" for striking such memoranda, *Tepeyac*, 779 F.Supp.2d at 460 (internal quotation marks and citation omitted), Defendants' motion to strike will be denied.

Denial of the motion to strike does not, however, obligate the court to consider Plaintiff's surreply when resolving Defendants' motion for summary judgment, and Plaintiff's belated motion for leave to file a surreply will, therefore, be denied. Pursuant to Local Rule 105.2(a), "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed." Indeed, the court generally only allows surreplies when "the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003), *aff'd*, 85 F.App'x 960 (4th Cir. 2004).

Plaintiff did not obtain permission from the court prior to filing his surreply. In fact, he only retroactively sought leave to file it when he opposed Defendants' motion to strike more than one month after submitting the surreply. Plaintiff nevertheless contends that "[t]he interests of justice" require

10

consideration of his surreply because that memoranda identifies the manner in which Defendants' reply "mischaracterize[d]" the arguments he presented in opposition to their motion for summary judgment. (ECF No. 110, at 1). Such an argument, however, is insufficient to justify the filing of a surreply as it does not "address a new matter" set forth for the first time in the reply. *Khoury*, 268 F.Supp.2d at 606 (denying the plaintiff's motion for leave to file a surreply in order "to correct what [the plaintiff] perceive[d] to be Defendant's misrepresentations" of the record and the law); *see also Thomas v. Artino*, 723 F.Supp.2d 822, 833 n.2 (D.Md. 2010) (declining to consider a surreply that sought to address "Plaintiff's misstatements of facts and law raised for the first time in [the] reply memorandum").[10] Accordingly, the court will deny Plaintiff's request to file a surreply and will not consider the surreply in resolving the pending summary judgment motion.

## III. Defendants' Motion for Summary Judgment Will Be Denied Because the Record Indicates the Presence of Numerous Material Factual Disputes

### A.   Standard of Review

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is

---

[10] Indeed, in large part, the arguments in Plaintiff's surreply were included in his opposition to Defendants' motion for summary judgment. (*Compare* ECF No. 105, *with* ECF No. 107).

entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## B.   Analysis

Defendants have moved for summary judgment on counts one through three.   They contend that summary judgment in their favor is warranted on counts one and two because Plaintiff is unable to identify the men involved in his alleged assault.   As to count three, Defendants maintain that qualified immunity protects them from liability.   Plaintiff opposes these arguments in their entirety, contending that multiple genuine disputes of material fact remain for a jury to resolve.

### 1.   Counts I and II

In counts one and two, Plaintiff seeks to hold Defendants liable for violating his rights under Article 26 of the Maryland Declaration of Rights by using excessive force to effectuate his arrest.   According to Defendants, as to count one, "[t]here is no evidence to support a reasonable inference that the Defendant officers struck Plaintiff with their feet, hands or any other object." (ECF No. 101-2, at 21).   Additionally, because count two, the *respondeat superior* claim against the County, turns on a finding of liability as to the Defendant officers in count one, count two must also fail.   These arguments, which overlook

substantial portions of the record that Defendants themselves submitted to the court, are patently without merit.[11]

Defendants argue that Plaintiff's inability to identify the officers who beat him somehow precludes counts one and two from proceeding past summary judgment. They first contend that Plaintiff initially identified his attackers as "White guys" before stating in a subsequent deposition that the men who attacked him were African-American. (ECF No. 101-2, at 21). According to Defendants, this purported inconsistency is fatal to Plaintiff's claims. This argument, however, misconstrues the nature of Plaintiff's statements on the issue of his attackers' race and fails to realize that they are reconcilable. *Cf. Solis v. Prince George's Cnty.*, 153 F.Supp.2d 793, 800-01 (D.Md. 2001) (noting that the plaintiff's "contradictory" testimony did not warrant summary judgment in the defendants' favor because the two versions of the plaintiff's story "[did] not represent mutually exclusive courses of action"). Plaintiff rightly points out that he did not identify the men who assaulted him as Caucasian during his first deposition. Rather, Plaintiff merely stated that he believed the men who exited the vehicles to chase

---

[11] For instance, Defendants – not Plaintiff - submitted Plaintiff's depositions and responses to interrogatories, which discuss in detail the manner in which unidentified police officers severely beat him, as part of the record for the court to consider in resolving this motion.

him were mostly "White guys," emphasizing that he could not positively identify the men who subsequently attacked him. (ECF No. 101-4, at 65).  He also noted that the incident occurred at dusk and that he began running as soon as he saw the men exit the vehicles and never looked back.  These statements are not inconsistent with Plaintiff's subsequent assertion that he saw at least two African-American men on the scene following his assault yet remained unable to identify any of the officers involved in the beating.[12]

Defendants also emphasize that Plaintiff testified his attackers wore "street clothes" and jumped out of two vehicles, including an unmarked four-door car, although all of the Defendant officers purportedly wore dark blue uniforms and jumped out of an unmarked minivan.  They assert that these inconsistencies further demonstrate that the Defendant officers could not have been involved in Plaintiff's alleged assault. (ECF No. 101-5, at 22).  This argument is unpersuasive.  The fact that the parties disagree about the Defendant officers' attire or the model of the vehicle(s) they exited is far from fatal to Plaintiff's claims.  If anything, these discrepancies merely reinforce the conclusion that genuine disputes of

---

[12]  In light of this testimony, Defendants' subsequent assertion that Officers Brown, Lewis, and King could not have assaulted Plaintiff because they are African-American is unavailing.

material fact render summary judgment improper. *See Floyd v. City of New York*, 813 F.Supp.2d 417, 445-46 (S.D.N.Y. 2011) (concluding that material factual disputes existed where the plaintiff's description of the defendant police officers and their vehicle was inconsistent with the information provided by the officers). As stated above, this incident began at dusk, and Plaintiff had very little time to observe the attire of the Defendant officers or their vehicle(s) before running away from them and into a dimly-lit yard where the beating allegedly occurred.[13] Thus, contrary to Defendants' assertion, the parties' disagreement about the Defendant officers' attire or the type of vehicle(s) they drove on the evening of March 29, 2007, does not establish that they were not the officers who allegedly attacked Plaintiff.[14]

---

[13] Plaintiff clarified in his responses to Defendants' interrogatories that the Defendant officers were "dressed in dark clothing that did not identify them as police officers, *as far as he could see*." (ECF No. 101-6, at 4) (emphasis added). Additionally, by Defendants' own admission, Officer Lewis was partially dressed in "street clothes" on the evening of March 29, 2007. (ECF No. 101-8, at 3).

[14] In their reply, Defendants make the puzzling assertion that summary judgment in their favor is warranted because the "only" remaining factual dispute in the case is "which of the two conflicting versions of the plaintiff's testimony" – regarding the race of his attackers and whether they used night sticks - to believe. (ECF No. 106-1, at 3) (internal quotation marks and citation omitted). This argument suffers from two fatal flaws. First, the alleged discrepancies identified by Defendants are not necessarily inconsistent. Second, these

At its core, Defendants' argument is that Plaintiff must be able to identify the Defendant officers as his attackers to proceed past summary judgment. There is, however, no support in the law for this bald conclusion. Indeed, "the very presence of the officers at the scene [of an alleged assault] may constitute sufficient evidence for a jury to infer that the officers participated in an illegal beating that [is] shown to have occurred." *Segal v. Los Angeles Cnty.*, 852 F.2d 1290, 1988 WL 79481, at *2 (9th Cir. 1998) (unpublished opinion). Applying this principle in analogous cases, courts throughout the country have repeatedly concluded that a "classic factual dispute to be resolved by the fact finder" exists in cases where a plaintiff cannot identify the police officers who beat him but those officers admit being in the vicinity at the time the beating allegedly occurred. *Smith v. Mensinger*, 293 F.3d 641, 650 (3[d] Cir. 2002); *Fogarty v. Gallegos*, 523 F.3d 1147, 1152-66 (10th Cir. 2008); *Summerlin v. Edgar*, 809 F.2d 1034, 1035-38 (4th Cir. 1987); *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989).

---

"conflicts" are hardly the "only" factual disputes at issue in this case. Indeed, in light of the factual disputes discussed in the text of this opinion, which Defendants highlighted in their own motion papers and illustrated with evidence, this argument is disingenuous at best.

Here, Plaintiff admits that he cannot positively identify the Defendant officers as the men who purportedly assaulted him on the evening of March 29, 2007, because he was "in a defense mode" and had covered his face with his hands and arms to protect against the officers' blows. (ECF No. 101-5, at 25).[15] Each of the Defendant officers, however, has acknowledged that he was in the vicinity of Ms. Clark's side yard when Plaintiff's beating allegedly occurred. These admissions are sufficient to create a material factual dispute regarding the Defendant officers' involvement in Plaintiff's beating. Accordingly, Defendants' motion for summary judgment as to counts one and two will be denied.

   **2.   Count III**

In count three, Plaintiff seeks to hold the Defendant officers liable under § 1983 for using excessive force against him during his arrest. Defendants contend that summary judgment in their favor is warranted because the Defendant officers' actions are protected by qualified immunity. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

---

   [15] In addition, it bears repeating that the incident occurred at dusk and took place principally in a dimly-lit yard.

457 U.S. 800, 818 (1982).   Here, Defendants contend that "no constitutional violation occurred" and that, even if it did, the rights violated were not clearly established at the time this incident occurred.   (ECF No. 101-2, at 29-31).   Taking the facts in the light most favorable to Plaintiff, as the court must at this stage, these arguments must be rejected.

Defendants first contend that Plaintiff cannot establish a violation of his constitutional rights because the Defendant officers had probable cause to arrest him and because "a reasonable jury could not find that the officers beat the Plaintiff."   (ECF No. 101-2, at 31).   The first assertion is puzzling.   According to Defendants, "[i]n the present case, Plaintiff maintains that there was no probable cause for his arrest" (*id.* at 28). This contention, however, both misstates the record and fundamentally misunderstands the basis of Plaintiff's § 1983 claim.   Plaintiff does not contest that probable cause existed for his arrest.   Indeed, at Plaintiff's first deposition, his counsel reiterated this point by emphasizing that Plaintiff "did not [pursue] a false arrest suit," but had pursued a suit for excessive force stemming from the Defendant officers' actions after Officer Brown had tackled Plaintiff.   (ECF No. 101-4, at 7).   Whether probable cause existed for his arrest thus does not answer the question of whether the Defendant officers used excessive force by

purportedly beating him when effectuating that arrest. *See, e.g.*, *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (reasoning that "[a] genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest").

Defendants' second contention – that "a reasonable jury could not find that the officers beat the Plaintiff" (ECF No. 101-2, at 31) – is equally without merit. As explained with regard to counts one and two, numerous disputes of material fact remain at this stage of the case, rendering summary judgment inappropriate. In an attempt to overcome these factual disputes and obtain summary judgment, Defendants contend that "the court should focus on the [Defendant] officers' testimony" because Dr. Lone Thanning, Defendants' medical expert, has concluded that the medical evidence does not support Plaintiff's version of events and description of his injuries. (ECF No. 106-1, at 6).[16] This argument is rife with flaws. As an initial matter, it

---

[16] Defendants also contend that Plaintiff's testimony should not be credited because his hospital records contain "various versions" of how his injuries resulted from some sort of fall. (ECF No. 106-1, at 6). This contention is unpersuasive. Plaintiff stated that he was unable to speak when the treating EMTs arrived on the scene and that it was unidentified police officers who provided those EMTs with multiple "cover stories" – which ultimately found their way into Plaintiff's medical records - about the source of his injuries. (ECF No. 101-6, at 4). At this stage, these facts must be taken as true. *Scott*, 550 U.S. at 378.

contravenes well-established summary judgment principles by asking the court – rather than a jury – to make credibility determinations about Plaintiff and Dr. Thanning's deposition testimony. *See Caboni v. Gen. Motors Corp.*, 398 F.3d 357, 361 (5th Cir. 2005) ("The trier of fact . . . is not bound by expert testimony and is entitled to weigh the credibility of all witnesses, expert or lay."); *Shaw v. Stroud*, 13 F.3d 791, 804 (4th Cir. 1994) ("[T]he credibility of a deposition is a question for the jury rather than an issue to be settled at the summary judgment stage."). It also ignores deposition testimony from Plaintiff's medical experts – which Defendants placed in the record – as well as one expert report concluding that Plaintiff's injuries are consistent with interpersonal violence sustained during a beating. (ECF No. 101-17, Dr. Coletti Dep., at 35-36; ECF No. 101-18, Dr. Salama Dep., at 34; ECF No. 105-12, at 2).[17] Ironically, rather than demonstrate the absence of

---

[17] Defendants urge the court to ignore this deposition testimony because Plaintiff's experts did not interview the Defendant officers or treating EMTs when writing their reports and thus "were not fully apprised of the facts of this case." (ECF No. 101-2, at 31). Plaintiff's experts reached their conclusions following review of Plaintiff's relevant medical records and extensive observations and treatment of Plaintiff during his stay at the Baltimore hospital. Defendants articulate no reason why this methodology was insufficient or why Plaintiff's experts should have interviewed them or the EMTs before forming their opinions.

material factual disputes, Defendants' motion papers have highlighted them, underscoring the reason that the court cannot determine whether the Defendant officers violated Plaintiff's Fourth Amendment rights by using excessive force in effectuating his arrest.

Defendants have also argued that the Defendant officers are entitled to qualified immunity because any of Plaintiff's rights that may have been violated were not clearly established at the time of the incident. In support of this argument, Defendants assert that "a reasonable officer . . . would not believe that the pursuit and arrest of a fleeing individual . . . engaging in an illegal drug transaction was unlawful." (ECF No. 101-2, at 29). This argument – much like Defendants' prior arguments – misses the mark. As previously explained, Plaintiff is pursuing

---

In a separate part of their motion papers, Defendants ask the court to credit the portion of Plaintiff's experts' testimony acknowledging that Plaintiff's injuries could have resulted from falling face first on a concrete slab following Officer Brown's tackle. The inconsistency between these requests reveals the untenable nature of Defendants' arguments. At bottom, Defendants seek to have the court consider the testimony of Plaintiff's experts only to the extent their conclusions are consistent with those of Dr. Thanning. This, the court cannot do. The credibility of the parties' experts and the decision regarding which portions of their testimony to credit is a decision for the jury, not the court. *See Caboni*, 398 F.3d at 361. In resolving Defendants' summary judgment motion, all facts and reasonable inferences therefrom must be taken in the light most favorable to Plaintiff. *Scott*, 550 U.S. at 378.

an excessive force claim, not a claim for false arrest.  Thus,
the fact that Officer Brown's tackle of Plaintiff was a "use of
standard take down procedures" (*id.* at 30), and may have
appeared reasonable to Officer Brown is irrelevant to whether
the Defendant officers displayed excessive force by beating
Plaintiff following the tackle.[18]  Additionally, as with
Defendants' arguments regarding the alleged constitutional
violations, Defendants again take the facts in the light most
favorable to themselves, rather than Plaintiff.  Because
material factual disputes abound with regard to the events of
March 29, 2007, Defendants' reliance on the defense of qualified
immunity is unavailing.  Accordingly, their request for summary
judgment as to count three must be denied.

**IV.  Conclusion**

    For the foregoing reasons, Defendants' motions to strike
and for summary judgment will be denied, as will Plaintiff's
motion for leave to file a surreply.  A separate Order will
follow.

                                      /s/
                        _____
                        DEBORAH K. CHASANOW
                        United States District Judge

_____

    [18] The right to be free from excessive force stemming from a
beating during an arrest was clearly established at the time of
Plaintiff's alleged assault.  *See Graham*, 490 U.S. at 395-96.

23